FILED
2015 Feb-06  AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JESSICA MARIE MUNIZ,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION NO:** |
| **Plaintiff,** | ) | **2:13-cv-1163-KOB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S MEDICAL EXPERTS AND MOTION FOR SUMMARY JUDGMENT

---

**COMES NOW** the Plaintiff, and moves this Honorable Court to deny the Government's Motion to Exclude Plaintiff's Experts and Motion for Summary Judgment on the grounds that Plaintiff's experts are not due to be excluded and the Government is not entitled to judgment as a matter of law and that genuine issues of material fact exist in this matter.

# TABLE OF CONTENTS

A.   Response to Movant's Statement of Facts.................................................3

B.   Additional Undisputed Facts.........................................................8

C.   Additional Disputed Facts...........................................................10

Standard of Review.....................................................................11

Introduction...........................................................................11

Argument...............................................................................13
I.   The Plaintiff has presented Medical Expert Opinions that comply with the Alabama Medical Liability Act of 1987 ("AMLA")...........................................13

A.   Plaintiff's Expert, Dr. Mary Jensen, an Interventional Radiologist, has Defined the Standard of Care in Accordance with the AMLA in her Initial Rule 26 Report, Her Deposition Testimony and Again in Her Supplemental Rule 26 Report....13

B.   Dr. Jensen Has Sufficiently Disclosed the Reasons and Basis for Her Expert Opinions in accordance with the Rules of Civil Procedure.................................16

C.   Plaintiff's Expert Testified Regarding Causation of Damage to Plaintiff's Blood Vessels as it Relates to Dr. Kamel's Breaches in the Standard of Care.  Plaintiff Relies on the Testimony of Dr. William Harvey, a Vascular Surgeon for Causation Evidence with Regard to Plaintiff's Eventual Leg Amputation.................................21

II.  Plaintiff's Other Medical Expert Opinions on Causation are not Due to be Excluded under FRE Rule 702 or *Daubert*.................................24

III. Dr. Harvey's Opinions Are Not Excludable Under the AMLA.........27

Conculsion.............................................................................28

### A.    Response to Movant's statement of facts

The Plaintiff disputes the following enumerated facts from the Government's brief:

2.    Nowhere in the exhibits cited by the Government is there any information describing the affects of Bipolar Disorder or that Bipolar Disorder causes Jessica Muniz to have "unusual mood shifts along with variations in energy and activity levels which usually results in the inability to carry out day-to-day tasks."

6.    Plaintiff disputes that she was provided with "informed" consent. (Deposition of Suzanne Muniz, PEX-G, pp. 5-6). Plaintiff's mother, Suzanne Muniz, testified that she and her daughter never saw the consent form until after the Plaintiff went into the procedure room. (PEX-G, p. 6). Plaintiff further disputes that Dr. Kamel explained to her that the right groin was the better approach anatomically or better for him. (Deposition of Jessica Muniz, Doc. 28-1, pp. 19-20, 42-44). This assertion that Dr. Kamel made this explanation is likewise nowhere to be found in the citation provided by the Government, pp. 50-55, of Dr. Kamel's deposition.

7.    Plaintiff disputes that she consented to the right leg approach.

(Deposition of Suzanne Muniz, PEX-G, pp. 5-6; Deposition of Jessica Muniz, Doc. 28-1, pp. 19-20).  Plaintiff disputes that she was "awake" for the procedure (Deposition of Jessica Muniz, Doc. 28-1, p. 40).  The medical records of the procedure performed by Dr. Kamel establish that she was sedated for the procedure.  (Doc. 28-40, p. 2).  Plaintiff disputes that she complemented Dr. Kamel on a "painless" procedure.  (Deposition of Jessica Muniz, Doc. 28-1, p. 43).

8.     Plaintiff disputes that the "entry was above and upstream of the chronic dissection in the right femoral artery."  The entry was in the external illiac artery.  (Deposition of Dr. Mary Jensen, Doc. 28-3, pp. 30, 38; PEX-B, Supplemental Rule 26 Report of Dr. Mary Jensen, pp. 5, 8).  Plaintiff disputes that she "had normal pulses (2+) in both leg[s] prior to the procedure and afterwards."  Plaintiff's Exhibit C, consisting of page 21 of Plaintiff's July 2009 BVAMC Post-Procedure Nursing Observation Notes clearly show that Plaintiff's right pedal pulses were decreased from a (2+) pre-procedure measurement to (1+) while being measured during this six hour time span (11:30 to 17:28) after the procedure.  (PEX-C).

9.     Plaintiff disputes that she "continued to have normal pulses (2+) in both legs in October and November 2009."  Exhibit 9 to Dr. Kamel's

deposition, Doc. 27-42, page 13, is a medical record that does not show
normal pulses for November 2009 despite the Government's contention.
The (2+) designation in the November 2009 record refers to deep tendon
reflex, a neurological exam finding, not a pulse measurement.  Plaintiff
disputes that she had "proper blood flow up through March 15, 2011."
(PEX-B, Supplemental Rule 26 Report of Dr. Mary Jensen, p. 16 paras. Y
and Z[1]).

10.     Plaintiff disputes the Government's assertion that "the operative
note for the amputation indicates the cause of amputation as being 'failed
aterial reconstructions.'"  The operative note, attached as "Exhibit 9" to Dr.
Harvey's Deposition, Doc. 27-31, page 29 states that "failed arterial
reconstructions" is the pre and post-operative diagnosis.  The records do not
indicate the cause of the amputation.

11.     Plaintiff disputes that Dr. Jensen "provided no basis or reasons
for these six conclusions or findings in her Rule 26 report."  Dr. Jensen
based her opinions on her education, training, experience and knowledge
regarding the applicable standard of care.  (Doc. 27-5, p. 29).  Further, as she

---

[1]These paragraphs in Dr. Jensen's supplemental Rule 26 Report describe the
decreased blood flow as a result of the injury caused by Dr. Kamel's 2009 procedure on
the Plaintiff.

stated in her initial Rule 26 report, Dr. Jensen reserved the right to add, alter, amend or modify her opinions after review of Dr. Kamel's deposition. (Doc. 27-5, p. 30). She has done so in her deposition as well as her supplemental Rule 26 Report dated February 4, 2015.

12.    Plaintiff disputes that Dr. Jensen stated "for the first time" in her deposition the basis and reasons for her conclusions or findings. Dr. Jensen based her opinions in her initial Rule 26 report on her education, training, experience and knowledge regarding the applicable standard of care. (Doc. 27-5, p. 29). Also, to be fair, Dr. Kamel's deposition along with the Depositions of Dr. Harvey and Dr. Wadlington were not taken until December 4, 2014, December 9, 2014 and December 11, 2014 respectively while Dr. Jensen was deposed on December 15, 2014. Plaintiff disputes that Dr. Jensen was "under leading questioning" by Plaintiff's counsel. Plaintiff disputes that Dr. Jensen "did not give the basis and reasons for her conclusions or findings during questioning by Government's counsel who noticed the deposition." (Deposition of Dr. Mary Jensen, Doc. 28-3, pp. 17, 23-27, 29, 30). Further, Government's counsel refused to inquire into the basis and reasons for Dr. Jensen's conclusions beyond the citation listed above even after Plaintiff's counsel's extensive questioning allowed Dr.

Jensen to expound on all issues.

13.    Plaintiff disputes that Dr. William Harvey "provided no basis or reasons for this opinion in said Plaintiff's expert disclosure." Dr. Harvey clearly bases his opinion upon his "training and experience and [his] hands on care of Jessica Muniz." (Doc. 27-31, p. 22). Further, Dr. Harvey is not a retained expert and, as such, is not required to produce a report containing the basis of his opinions pursuant to F.R.C.P. 26(a)(2)(c).

14.    Plaintiff disputes that "Dr. Harvey indicated at his deposition of December 9, 2014, that Plaintiff's original chronic dissection (existing since at least 2007) was the cause of Plaintiff's eventual right leg amputation." This is flatly false. Dr. Harvey testified that the fact that Plaintiff only became symptomatic after the 2009 procedure by Dr. Kamel indicated to him that damage was done during that 2009 procedure ultimately led to the amputation of Plaintiff's leg. (Deposition of Dr. Harvey, pp. 34-35, Doc. 27-31, p. 10). Dr. Harvey's opinion is further supported by Dr. Jensen's findings from the radiological films evidencing a new vessel dissection created by Dr. Kamel's 2009 procedure in her Supplemental Rule 26 report. (PEX-B, pp. 10-16, 26-27).

18.    Plaintiff responds that the deposition of Dr. Jensen was

completed on December 15, 2014 and that Plaintiff's discovery responses were supplemented on January 12, 2015 after receiving the transcript of Dr. Jensen's deposition[2].

19.     Plaintiff responds that Dr. Jensen completed a Rule 26(a)(2)(B) expert report containing all of her opinions and the basis and reasons for them on February 4, 2015 which has been provided to the Government.

20.     Plaintiff responds that Dr. Harvey is one of Plaintiff's treating physicians and is not a retained expert and, as such, is not required to produce a report containing the basis of his opinions pursuant to F.R.C.P. 26(a)(2)(c).

**B.     Additional undisputed facts**

1.     Dr. Mary Jensen has been licensed to practice medicine continuously since 1983.  (Doc. 27-6, p. 1).

2.     Dr. Jensen is the Vice Chair for Operations in the Department of Radiology at the University of Virginia.  (Doc. 27-6, p. 2).

3.     Dr. Jensen was Board Certified in Radiology by the American Board of Radiology in 1987 and has been so certified since that time. (Doc.

---

[2]The Government's experts, Drs. Kamel and Tart both supplemented their Rule 26 Reports after the close of discovery on January 12, 2015 and January 14, 2015, respectively.

27-6, p. 1).

4.    In June 2009, Dr. Kamel became Board Certified in

Radiology by the American Board of Radiology.  As such he was certified

only in the month prior to Plaintiff's procedure on July 20, 2009.  (Doc. 27-

49, p. 2).

5.    Dr. Kamel did not receive his certificate of added qualification

in Interventional Radiology until November, 2011, over two years after his

treatment of the Plaintiff.  (Doc. 27-49, p. 2).

6.    The radiological study that was performed on the Plaintiff by

Dr. Kamel, a cervicocerebral angiogram, is a procedure that Dr. Jensen has

participated in "almost daily over my career as a neuroradiologist, either in

its performance or in its instruction."  (PEX-B, p. 2).

7.    In her career, Dr. Jensen has percutaneously accessed arteries,

as was done in Plaintiff's 2009 procedure, "thousands" of times. (PEX-B, p.

2).

8.    Dr. Jensen, in her deposition, testified regarding the appropriate

standard of care, and Dr. Kamel's specific breaches of that standard.

(Deposition of Dr. Mary Jensen, Doc. 28-3, pp. 35-39, 47-67).

9.    Dr. Jensen, in her Supplemental Rule 26 Expert Report

identifies the applicable standard of care and states that Dr. Kamel's failure to meet the standard of care caused Plaintiff to be harmed.  (PEX-B, pp. 26-27).

10.    Dr. Jensen, in her deposition, testified that Dr. Kamel's failure to meet the standard of care caused additional dissection and harm to the Plaintiff.  (Deposition of Dr. Mary Jensen, Doc. 28-3, p. 67).

11.    Dr. Van Wadlington, a Board Certified Radiologist who treated the Plaintiff, testified that in his training and experience, he was never taught that the standard of care required a right-side angiogram and that the standard of care was to use the left side.  (Deposition of Dr. Van Wadlington, attached as PEX-H, p. 21).

12.    Dr. Harvey testified as follows regarding causation:

Q:   And would the fact that she only began to become symptomatic after the 2009 procedure indicate to you, at least, that damage was done during that procedure which ultimately led to the amputation?

A:    (After objection by the Government's attorney) The answer to that would be, yes, I do think that there was some more injury to the artery in 2009.  And I base that on the fact that she had no symptoms prior to that, but she did develop symptoms after that arteriogram.

(Deposition of Dr. Harvey, p. 35, Doc. 27-31, p. 10).

**C.    Additional Disputed Facts**

1.     Plaintiff states that the 2009 procedure performed by Dr. Kamel caused a new dissection and harmed her.  (Deposition of Dr. Mary Jensen, Doc. 28-3, pp. 49, 67; PEX-B, pp. 10-12, 26-27).  Dr. Kamel disputes this and denies that the 2009 procedure he performed caused any dissection or harm to the Plaintiff.  (Doc. 27-58, p. 11).

## STANDARD OF REVIEW

When deciding summary judgment, the court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 111 S.Ct. 2419, 2434-35, 115 L. Ed. 2d 447 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## INTRODUCTION

Alabama Code § 6-5-548 (1975), which sets out the requirement for standard of care testimony only allows similarly situated health care

providers to provide standard of care testimony.  Dr. Jensen clearly meets

the requirements of Alabama Code § 6-5-548(c) as she is licensed, trained,

experienced, Board Certified and practiced in the same specialty as Dr.

Kamel during the year proceeding the date that Plaintiff alleges Dr. Kamel

breached the standard of care.  The Government does not dispute Dr.

Jensen's qualifications under § 6-5-548(c).  However, the Government

incorrectly claims that a similarly situated health care provider is required to

give causation evidence.  This requirement is not found in Alabama Code §

6-5-548 (1975).  In fact, Alabama Courts have even allowed non-physicians

to testify regarding causation.[3]  In a case cited by the Plaintiff in her

response, *Rivard v. University of Alabama Health Services Foundation,*

*P.C.*, 835 So.2d 987 (Ala.2002), a urologist was permitted to provide

causation evidence in a case alleging malpractice against an orthopedic

surgeon.  The Alabama Supreme Court, recognizing that causation evidence

may be provided by a medical expert not similarly situated to a defendant,

has held that "A distinction must be made between testimony as to cause and

---

[3]See *Knapp v. Wilkins*, 786 So. 2d 457 (Ala. 2000)(Chiropractor allowed to testify concerning medical causation.); See also *Ellingwood v. Stevens*, 564 So. 2d 932, 936 (Ala. 1990)(Physicist allowed to testify concerning medical causation.).  Alabama has "also held that the opinion of dentists or chemists, who receive training similar to that received by physicians on the effects of drugs on the human body, is admissible as expert testimony on that issue." *Tidwell v. Upjohn*, 626 So. 2d 1297, 1300 (Ala. 1993) (citing *Thaggard v. Vafes*, 119 So. 647 (Ala. 1928)).

testimony relative to the standard of care required of a physician." *Bell v. Hart*, 516 So.2d 562, 569 (Ala. 1987) (citations omitted).

## ARGUMENT

**I.      The Plaintiff has presented Medical Expert Opinions that comply with the Alabama Medical Liability Act of 1987 ("AMLA").**

As an initial matter, Plaintiff agrees with the Government that this Court properly has jurisdiction over this matter and that the Alabama Medical Liability Act of 1987 (Ala. Code §§ 6-5-540 through 6-5-552) applies to this action.

**A.      Plaintiff's Expert, Dr. Mary Jensen, an Interventional Radiologist, has Defined the Standard of Care in Accordance with the AMLA in her Initial Rule 26 Report, Her Deposition Testimony and Again in Her Supplemental Rule 26 Report.**

The Government's first argument in support of its motion for summary judgment is that Dr. Mary Jensen, the plaintiff's expert, "never" defined the standard of care in her Rule 26 Report or deposition. The Government points first to Dr. Jensen's Rule 26 Report in which she states that in 2009 there was a national standard of care applicable to an Interventional Radiologist performing cerebral angiography faced with the same or similar circumstances as Dr. Kamel and that she is knowledgeable

about that standard.  (Doc. 27-5, pp. 29-30).  As the Government acknowledges in its brief, Dr. Jensen goes on to state Dr. Kamel's actions that breached the applicable standard of care in her report and describes those breaches.

With regard to Dr. Jensen's deposition testimony, the Government criticizes Dr. Jensen for not "defin[ing] the standard of care or the basis for her contention that she knew what the standard of care was in 2009."  (Doc. 26, p. 19).

In her deposition, Dr. Jensen very clearly testified that a national standard of care existed for radiologists performing the procedure in the same or similar circumstances that Dr. Kamel performed on the Plaintiff. (Deposition of Dr. Mary Jensen, Doc. 28-3, pp. 35-36).  She then testified regarding the specific breaches in the standard of care and the basis for her opinions.  (Deposition of Dr. Mary Jensen, Doc. 28-3, pp. 35-39, 47-67).

With regard to establishing the standard of care in a medical malpractice action, the Alabama Supreme Court has held that: "In most medical malpractice cases, the standard of care is sufficiently established by reference to particular acts of the defendant."  *Rudolph v. Lindsay*, 626 So. 2d 1278, 1281 (Ala.1993).  In the *Rudolph* case the Alabama Supreme Court

reviewed the entry of summary judgment in favor of a defendant physician. In its analysis, the Court had to determine whether or not the plaintiff's expert affidavit was sufficient to create a genuine issue of material fact with regard to whether or not the defendant breached the standard of care. The court held the following:

> As in Dr. Lindsay's [the defendant's] affidavit, the standard of care is implicit in Dr. Doyle's [the plaintiff's expert's] assertion of what Dr. Lindsay should have done. Although Dr. Doyle did not specifically state that he was familiar with the standard of care, his recitation of qualifications supports an inference that he is familiar with the appropriate standard. Dr. Doyle stated in his affidavit that Dr. Lindsay breached the standard of care by 'failing to assess the potential for suicide in light of the prior suicide attempt and his underlying psychosis.' Dr. Doyle's affidavit also indicates that Dr. Lindsay breached the standard by failing to more fully evaluate the decedent in light of his prior suicide attempt and in discharging the decedent without instituting suicide precautions. The standard of care, the care that Dr. Lindsay should have provided, is sufficiently inferable from the substance of Dr. Doyle's affidavit.

*Id.* at 1282.

Dr. Jensen's Rule 26 report very clearly states that a national standard of care existed, that she is familiar with that standard, and then goes on to state Dr. Kamel's specific breaches in the applicable standard of care. This information goes beyond what the Court found to be sufficient to create a genuine issue of material fact in the *Rudolph* case cited above wherein summary judgment in favor of a physician was reversed.

To argue that Dr. Jensen has failed to sufficiently state the applicable standard of care, as the Government does, is to ignore the Alabama Supreme Court precedent regarding what constitutes sufficient evidence of the standard of care and Dr. Jensen's sworn testimony.

### B.   Dr. Jensen Has Sufficiently Disclosed the Reasons and Basis for Her Expert Opinions in accordance with the Rules of Civil Procedure.

The Government next argues that, procedurally, Dr. Jensen's initial Rule 26 Report was deficient in that it did not adequately disclose the basis and reasons for her opinions prior to the close of discovery and, as such, is due to be stricken as a "violation of Rule 26(a)(2)(B) and Rule 26(g), pursuant to Rule 37(c)(1). The Government's attorney, who refused to inquire into the basis of Dr. Jensen's opinions at her deposition taken on the date that discovery closed, who never contacted Plaintiff's counsel with regard to any alleged deficiencies in Dr. Jensen's report or filed any motion to compel a more complete report, now attempts to misuse the Rules of Civil Procedure as some sort of "gotcha" technique as opposed to appropriately eliciting Plaintiff's expert's opinions in order to get to the truth of the matter before the Court.

With regard to the basis for her opinions in her initial Rule 26 Report,

Dr. Jensen based her findings on her education, training, experience and knowledge regarding the applicable standard of care.  (Doc. 27-5, p. 29).  As stated above in the citation of the *Rudolph* case, the basis of a physician's opinions regarding the standard of care may be inferred from that physician's report, affidavit or simply from that physician's experience as a similarly situated medical provider.   The radiological study performed on the Plaintiff by Dr. Kamel, a cervicocerebral angiogram, is a procedure that Dr. Jensen has participated in "almost daily over my career as a neuroradiologist, either in its performance or in its instruction." (PEX-B, p. 2).  In her career, Dr. Jensen has percutaneously accessed arteries, as was done in Plaintiff's 2009 procedure, "thousands" of times. (PEX-B, p. 2).

Dr. Jensen further expounded in great detail, upon questioning by the Plaintiff's attorney, as to the basis for her own opinions at her deposition on December 15, 2014, the date that discovery closed.  (Deposition of Dr. Mary Jensen, Doc. 28-3, pp. 35-39, 47-67).  This was in spite of the fact that the Government's counsel refused to ask any questions with regard to the basis of her opinions.

As the Government acknowledges in its brief: "If an expert discusses the omitted opinion in the course of the expert's deposition, that will often

operate to satisfy Rule 26(e)(1) and prevent exclusion under Rule 37(c)(1)

unless the court determines that the omission was intentional and without

substantial justification and the opponent was unduly prejudiced as a result."

(Doc. 26, p. 20).  Very clearly, Dr. Jensen went into great detail with regard

to the basis for her opinions contained in her initial Rule 26 Report.

(Deposition of Dr. Mary Jensen, Doc. 28-3, pp. 35-39, 47-67).   Plaintiff

takes the position that the only opinions omitted from the original report that

were discussed at Dr. Jensen's deposition were based upon the deposition

testimony provided by Dr. Kamel, only eleven days prior to Dr. Jensen's

deposition.  Clearly Dr. Jensen could not comment on Dr. Kamel's

testimony back in March 2014 when the initial Report was completed

because Dr. Kamel had not yet testified.  And while the radiological studies

were available to Dr. Jensen, Dr. Kamel's description of the events leading

to the tests and thereafter was not available until after his deposition.

 The Government argues to this Court that Dr. Jensen's alleged failure

to provide the basis and reasons for her conclusions during Government's

counsel's questioning "appears to have been intentional and should cause

her testimony to be stricken pursuant to Rule 37(c)(1)."  (Doc. 26, p. 22).

What is very telling is what the Government argues just two pages before:

"the mere fact that an expert's deposition is taken and the opposing party has the opportunity to inquire into opinions omitted from the expert's report–**but does not in fact do so**–will not cure the omission in the report." (Doc. 26, p. 20) (emphasis added).  The Government cites no authority for this statement.  More importantly, this statement reveals that Government's counsel's tactic all along was to intentionally refuse to ask Dr. Jensen about the basis of her opinions and then accuse Dr. Jensen of intentionally not providing the basis of her opinions **when she was never asked by the Government's counsel** apparently in an effort to get this Court to dispose of this case procedurally.

A party who believes that an opposing party has disclosed an inadequate expert report should promptly object or request that the report be supplemented to avoid waiver of any objection at trial. *Roderick v. Wal-Mart Stores, East*, 666 F.3d 1093, 1096 (8th Cir. 2012).  The Government possessed Dr. Jensen's initial report for approximately nine months before taking her deposition, yet no motion to compel or request for supplementation was made to Plaintiff's counsel.

Rule 26(e)(2) requires a party to supplement its report both in regard to information included in the report and information given during the

expert's deposition.  Importantly, Rule 26(e)(2) requires that any "additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Per the Court's scheduling Orders, the pretrial disclosures under Rule 26(a)(3) are not yet due.

Nonetheless, in addition to making herself available via deposition to any question the Government would care to pose about her opinions, Dr. Jensen has prepared a Supplemental Rule 26 Report, attached as PEX-B, just as the Government's experts have done, after the close of discovery.  Per the Rules of Civil Procedure, this report is timely.  In that report, just as in her deposition, she goes into greater detail regarding the bases for her opinions. It is hard to fathom that the Government has suffered any prejudice when its own experts, Drs. Kamel and Tart utilized Dr. Jensen's testimony to provide their supplemental Rule 26 Reports.  (*See* Doc 27-58 and Doc. 27-59).  At this time **all the parties know where the experts stand on the issues.**

With regard to the Government's request that this Court strike Dr. Jensen's initial Rule 26 Report pursuant to Rule 37(c)(1), while Plaintiff argues that no sanction under Rule 37(c)(1) is warranted, when exclusion of information or documents is effectively dispositive of a claim, the court may scrutinize the sanction more closely.  *R & R Sails, Inc. v. Ins. Co. of*

*Pennsylvania*, 673 F.3d 1240, 1247-1248 (9th Cir. 2012); *Samaan v. St.*

*Joseph Hosp.*, 670 F.3d 21, 36-37 (1st Cir. 2012).  Clearly if Plaintiff's

expert, Dr. Jensen, is to be excluded, it would be dispositive of Plaintiff's

claim.

>    **C.**     **Plaintiff's Expert Testified Regarding Causation of Damage
>             to Plaintiff's Blood Vessels as it Relates to Dr. Kamel's
>             Breaches in the Standard of Care.  Plaintiff Relies on the
>             Testimony of Dr. William Harvey, a Vascular Surgeon for
>             Causation Evidence with Regard to Plaintiff's Eventual Leg
>             Amputation.**

The Government argues next that Dr. Jensen's medical causation

testimony and its basis were not disclosed to the Government's counsel prior

to Dr. Jensen's deposition. The Government further argues that this

testimony was not provided during the Government's counsel's questioning

of Dr. Jensen.  This is simply incorrect.

In her initial Report, Dr. Jensen stated the following:

> Dr. Kamel's performance of a cerebral angiogram using a right
> femoral artery approach was below the standard of care by using the
> compromised right femoral artery instead of the normal left femoral
> artery.  Further injury occurred to the right femoral artery in the form
> of dissection and she suffered further harm to the vessel.

(Doc. 27-5, p. 30).  Very clearly, Dr. Jensen opined that Dr. Kamel's breach

of the standard of care caused dissection in the artery and harm to the vessel

and provides the basis for that opinion, namely that Dr. Kamel's right

femoral artery approach was the breach that caused the dissection.

When questioned about this during her deposition by the Government's counsel, Dr. Jensen testified "standard of care speaks also to injuries that may occur during a procedure and, therefore, the finding is appropriate." (Deposition of Dr. Mary Jensen, Doc. 28-3, p. 29). The Government's counsel thereafter did not ask any more questions regarding this causation evidence. However, the balance of Dr. Jensen's deposition is replete with her making clear the impact of the breach by Dr. Kamel upon the Plaintiff's arteries. While Dr. Jensen does not offer testimony as to the cause of the amputation she has certainly set out that the breach caused injury to Plaintiff's vasculature in her initial Rule 26 Report, in her deposition and in her supplemental Rule 26 Report.

The Government argues that somehow it had no prior notice of this causation evidence despite having Dr. Jensen's report for almost nine months prior to her deposition. The Government further argues that somehow, its counsel and this Court were mislead and asks the Court to strike Dr. Jensen's causation testimony pursuant to Rule 37(c)(1).

Dr. Jensen is a radiologist and not a vascular surgeon. The Government's argument might hold water if Dr. Jensen was, for the first

time in her deposition, attempting to state that Plaintiff's leg amputation was caused by Dr. Kamel's July 2009 procedure, however that is not the case. Dr. Jensen, in her report and in her deposition, testified regarding Dr. Kamel's procedure causing dissection and harm to the Plaintiff's blood vessel, an area wholly within her expertise.  The Government, provided with this opinion long before Dr. Jensen's deposition, argues that it is "unduly prejudiced" by this opinion.  As stated before, the Government failed to request that Dr. Jensen provide a more complete report and did not move to compel a more complete report.  Further, when provided ample opportunity to explore all the bases for the opinion Dr. Jensen provided in her Rule 26 Report regarding causation, the Government's counsel did not ask any questions, even after extensive questioning by Plaintiff's counsel on this issue.

Following the Government's experts' supplemental reports, Dr. Jensen prepared a supplemental report dated February 4, 2015 wherein she responded to the Government's experts' criticisms of her testimony and opinions.  This Report additionally supplements her initial Report as required by Rule 26(e)(2) to reflect information given during her deposition.

As stated before, with regard to the Government's request that this

Court strike Dr. Jensen's initial Rule 26 Report pursuant to Rule 37(c)(1),

while Plaintiff argues that no sanction under Rule 37(c)(1) is warranted,

when exclusion of information or documents is effectively dispositive of a

claim, the court may scrutinize the sanction more closely. *R & R Sails, Inc.*

*v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247-1248 (9th Cir. 2012);

*Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 36-37 (1st Cir. 2012).  Clearly if

Plaintiff's expert, Dr. Jensen's testimony is to be excluded, it would be

dispositive of Plaintiff's claim.

## II.   Plaintiff's Other Medical Expert Opinions on Causation are not Due to be Excluded under FRE Rule 702 or *Daubert.*

The Government next asks this Court to exclude Dr. William

Harvey's opinions based upon FRE 702 and *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.* 509 U.S. 579 (1993).  The Government's arguments

are twofold: first, he did not produce a Rule 26(a)(2)(B) report and second

he has no reliable basis for rendering an opinion on medical causation.

With regard to Dr. Harvey's not producing a Rule 26 Report, the

Government argues that because Dr. Harvey testified "beyond any care and

treatment rendered to Ms. Muniz" he is required to provide a Rule 26

Report.  The Government cites no authority for this position.

Rule 26(a)(2)(B) requires an expert witness to provide a written report

"if the witness is one retained or specially employed to provide expert testimony." Dr. Harvey has not been retained by the Plaintiff. He is a subsequent treating physician. In addition, during his deposition Dr. Harvey even testified that he was paid no compensation for his study or testimony. (Deposition of Dr. Harvey, p. 11, Doc. 27-31, p. 4). The Government's argument, without any citation to authority, that Dr. Harvey was required to produce a Rule 26 Report is groundless.

The Government argues that Dr. Harvey testified that the Plaintiff's "original chronic dissection (2007) was the cause of Plaintiff's eventual right leg amputation." (Doc. 26, p. 25). The Government does not cite to Dr. Harvey's deposition or affidavit for this assertion. This is because **Dr. Harvey has never testified that the original dissection that existed prior to the procedure done by Dr. Kamel caused the Plaintiff to have her leg amputated**. Dr. Harvey testified that the fact that Plaintiff only became symptomatic after the 2009 procedure by Dr. Kamel indicated to him that damage was done during that 2009 procedure that ultimately led to the amputation of Plaintiff's leg. (Deposition of Dr. Harvey, p. 35, Doc. 27-31, p. 10).

The Government next argues that because Dr. Harvey did not review

Plaintiff's 2007 or 2009 medical records, then his opinion is unreliable and should be excluded by the Court. In addition to his deposition testimony, Dr. Harvey also provided an affidavit which was produced to the Government with Plaintiff's expert disclosures. That affidavit, executed by the physician who actually amputated the Plaintiff's leg, clearly states that Dr. Kamel's 2009 procedure caused Plaintiff harm. (Doc. 31, p. 22).

Whether or not causation testimony from a licensed treating physician, such as Dr. Harvey, is reliable under *Daubert* has been addressed by a Court in this District. In *Smith v. Hrynkiw*, 2008 LEXIS 123427 (N.D. Ala. 2008), the Court was faced with a similar challenge to a Plaintiff's physician expert witness's reliability under *Daubert*. In that case, the Court held that, with regard to reliability, "*Daubert* as well as other controlling cases, fully acknowledge that experience alone can satisfy the reliability prong under certain circumstances." *Smith* at \*24. The Court went on to cite *U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) as follows:

> In fact, the plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, experience, training, or education." The Committee Note to the 2000 Amendments of Rule 702 also explains that "[n]othing in this amendment is intended to suggest that experience alone...may not provide a sufficient foundation for expert testimony." Fed. R. Evid. 702 advisory committee's note (2000 amends.).

*Smith* at *24-*25.  The Government has not challenged Dr. Harvey's

education, training or experience.  The Government only takes issue with

Dr. Harvey's not reviewing the 2007 and 2009 records.  Plaintiff submits

that this, standing alone, is not a sufficient basis to exclude Dr. Harvey, a

Board Certified Vascular Surgeon, from testifying as to causation regarding

the vessel damage as the cause of the amputation.  Dr. Harvey's testimony,

when combined with Dr. Jensen's testimony, meets the requirements of the

AMLA with regard to expert testimony for causation.

### III.    Dr. Harvey's Opinions Are Not Excludable Under the AMLA.

For its final argument in its brief, the Government argues that Dr.

Harvey's opinions on causation should be excluded because he is not a

"similarly situated provider" and as such is not allowed to give causation

opinions under the AMLA.  The Government is incorrect.

The Government cites the case of *Springhill Hospitals, Inc. v.*

*Critopoulos*, 87 So.3d 1178 (Ala.2011) in support of its argument.

However, the *Critopoulos* case dealt with a medical expert who was not a

similarly situated provider attempting to offer *standard of care* testimony.

The AMLA clearly requires that only a similarly situated provider may

provide evidence regarding the applicable standard of care.  This

requirement does not exist for a medical expert providing causation

testimony, such as Dr. Harvey in the case at bar.

In *Rivard v. University of Alabama Health Services Foundation, P.C.*,

835 So.2d 987 (Ala.2002), the plaintiff alleged that the defendant physician,

an orthopedic surgeon, breached the standard of care and that the breach

caused him injury after he presented for treatment following an automobile

accident. The plaintiff offered the testimony of a Board Certified urologist

who testified that the effects of the accident and the surgery probably

combined to cause the plaintiff's injury. *Rivard* at 989. The Alabama

Supreme Court allowed this causation testimony even though the urologist

was clearly not similarly situated to the orthopedic surgeon accused of

malpractice.

Based upon the opinion in *Rivard*, the Government's argument that

Plaintiff may not elicit causation testimony from Dr. Harvey has no basis in

controlling Alabama case law.

## CONCLUSION

Undersigned counsel has practiced before the state and federal courts

here in Alabama for over 40 years. In those 40 years, the Courts, with the

assistance of lawyers representing parties, have had an unwavering

obligation to resolve disputes such as this by determining the truth. The Government in this case wrongfully attempts to resolve this dispute not with evidence or facts, but with procedure and with tactics such as attempting to exclude the testimony of experts on the basis of those experts' failure to respond to questions that the Government's attorney never asked. Plaintiff asserts that she has met her obligations under both the AMLA and the Rules of Civil Procedure in this matter and that the Government's counsel's attempts to misuse the Rules of Civil Procedure should not be rewarded.

Viewing the evidence in a light most favorable to the non-moving party, the Government's motion for summary judgment is due to be denied simply because, as argued above, genuine issues of material fact exist that must be determined and resolved by the trier of fact.

R. GORDON PATE
Attorney for Plaintiff

JULIA T. COCHRUN
Attorney for Plaintiff

**OF COUNSEL:**
**PATE & COCHRUN, LLP**
P. O. Box 10448
Birmingham, AL 35202-0448
(205) 323-3900
(205) 323-3906 (facsimile)
filings@plc-law.com

Page 29 of 30

CERTIFICATE OF SERVICE

I hereby certify that I have on this 6th day of February, 2015, electronically filed the foregoing (or notice thereof) with the Clerk of the Court using the CM/ECF system, the CM/ECF system will send notification of such filing to the following:

Joyce White Vance, Esq.
Jack B. Hood, Esq.
United States Attorney Office
1801 4th Avenue North
Birmingham, AL 35203
Jack.Hood@usdoj.gov

and I hereby certify that I have failed the foregoing documents by U.S. Mail, postage prepaid, to the following:

SAME AS ABOVE

R. GORDON PATE
Attorney for Plaintiff