FILED

2015 Aug-03  PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JESSICA MARIE MUNIZ,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **Case No.: 2:13-cv-01163-KOB** |
| **UNITED STATES OF AMERICA** ] | |
| ] | |
| **Defendant.** ] | |
| ] | |
| ] | |
| ] | |
| ] | |
| ] | |
| ] | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on "Defendant's Motion to Exclude Plaintiff's Medical Experts, Dr. Mary Jensen and Dr. William Harvey, and Motion for Summary Judgment." (Doc. 25). On June 21, 2013, Plaintiff Jessica Muniz brought a medical malpractice suit against the United States based on her allegation that Dr. Ahmed M. Kamel Abdel Aal, an interventional radiologist at the Veteran's Administration Hospital, negligently performed a medical procedure on her right leg. (Doc. 1). Ms. Muniz alleges that as a result of Dr. Kamel's negligence "she suffered severe injuries to her right leg and its internal structures," eventually leading to the amputation of her leg. (Doc. 1, at 2). In support of her position, Ms. Muniz relies on the expert testimony of Dr. Mary Jensen, an interventional radiologist who Ms. Muniz retained as an expert witness, and Dr. William Harvey, Ms. Muniz's treating physician who performed the amputation.

In its motion for summary judgment, the United States contends that the testimonies of both Dr. Jensen and Dr. Harvey should be excluded and that it is entitled to summary judgment without their expert testimony.  For the reasons discussed below, this court will grant the United States' motion to exclude Dr.  Harvey's testimony only as to causation, but will deny the motion to exclude Dr. Jensen's testimony.  Additionally, the court will deny the United States' motion for summary judgment.

## I.  Standard of Review

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks and citations omitted). This is because "the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citation and internal quotation marks omitted).

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## II. Background

The underlying complaint in this case stems from a cervico-cerebral angiogram,[1] performed by Dr. Kamel on Ms. Muniz's right leg. Prior to the procedure, Ms. Muniz had undergone numerous procedures on her right leg, including a diagnostic angiogram performed on August 27, 2007. During the diagnostic angiogram, Ms. Muniz suffered a dissection in her right femoral artery, resulting in the development of scar tissue in her right leg.

---

[1] A cervico-cerebral angiogram is a diagnostic procedure that provides images of the blood vessels in the brain and/or head. The procedure involves using a catheter, typically inserted into the patient's thigh, to inject a special dye into a patient's arteries.

On July 20, 2009, Dr. Kamel saw Ms. Muniz at the Veteran's Administration Hospital to perform the cervico-cerebral angiogram on Ms. Muniz's leg.  The pre-procedure notes indicated that the puncture site for the angiogram was to be in the *left* leg.  Additionally, Ms. Muniz told Dr. Kamel prior to the procedure that she previously had issues in her right leg and that the angiogram needed to be done in her *left* leg.  Nevertheless, Dr. Kamel elected to perform the procedure on Ms. Muniz's *right* leg.

Following the July 20, 2009 procedure, Ms. Muniz began experiencing pain in her right leg and received treatment from numerous physicians.  In July 2011, Ms. Muniz sought treatment for her leg from Dr. Harvey, a vascular surgeon.  Dr. Harvey determined that Ms. Muniz's pain was the result of restricted blood flow to her right leg, and he performed a series of arterial grafts to re-establish adequate circulation.  The procedures, however, were unsuccessful.  Eventually, Ms. Muniz's symptoms became so severe that Dr. Harvey concluded the only viable treatment for Ms. Muniz's condition was amputation.  On May 22, 2013, Dr. Harvey amputated Ms. Muniz's right leg below the knee.

Based on his treatment of Ms. Muniz, Dr. Harvey concluded that multiple dissections to Ms. Muniz's right femoral artery caused the reduction in blood flow to Ms. Muniz's leg, which eventually led to the amputation.  Dr. Harvey further concluded the dissections could only have been caused by Dr. Kamel's July 20, 2009 procedure based "on the fact that [Ms. Muniz] had no symptoms prior to that, but she did develop symptoms after that arteriogram."  (Doc. 27-31, at 10).

Following Dr. Harvey's amputation of the leg, Ms. Muniz brought suit against the United States, alleging that Dr. Kamel negligently performed the 2009 procedure and that Dr. Kamel's

negligence caused severe injuries to her right leg.  In support of her claim, Ms. Muniz offers the

testimony of Dr. Harvey to establish that Dr. Kamel's procedure caused her amputation.  Ms.

Muniz also offers the testimony of Dr. Jensen, a board certified interventional radiologist.  Dr.

Jensen reviewed Ms. Muniz medical records and offered testimony regarding the standard of care

for a physician performing a cervico-cerebral angiogram in similar circumstances to those of the

July 20, 2009 procedure.  She also testified that Dr. Kamel breached that standard of care by

performing the procedure on Ms. Muniz's right leg and that Dr. Kamel's breach harmed Ms.

Muniz by causing a further dissection of her femoral artery.

## II.  Discussion

Ms. Muniz brings her present claim for negligence against the United States pursuant to

the Federal Tort Claims Act ("FTCA").  Liability under the FTCA for "personal injury caused by

the negligent or wrongful act or omission of any employee of the Government," should be

determined "in accordance with the law of the place where the act or omission occurred."  28

U.S.C. § 1346(b)(1); *see Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001).

Because Dr. Kamel treated Ms. Muniz in Alabama, Alabama substantive law, specifically

Alabama's Medical Liability Act of 1987 ("AMLA"), governs Ms. Muniz's claim for medical

malpractice.  *See* Ala. Code §§ 6-5-540 to 6-5-552.

Under the AMLA, a plaintiff has "the burden of proving by substantial evidence that the

health-care provider failed to exercise such reasonable care, skill, and diligence as other similarly

situated health-care providers in the same general line of practice ordinarily have and exercise in

a like case."  Ala. Code § 6-5-548(a).  To do so, a plaintiff must establish "(1) the appropriate

standard of care, (2) the health-care provider's deviation from that standard, and (3) a proximate

causal connection between the health-care provider's act or omission constituting the breach and the injury sustained by the plaintiff." *Morgan v. Publix Super Markets, Inc.*, 138 So. 3d 982, 986 (Ala. 2013).    Further, to establish both the appropriate standard of care and that the health care provider breached that standard, a plaintiff must present expert testimony from a "similarly situated health-care provider." Ala. Code § 6-5-548; *Morgan*, 138 So. 3d at 986.

In its motion for summary judgment, the United States contends that Ms. Muniz cannot establish her claim because the opinions of her experts, Dr. Jensen and Dr. Harvey, are either due to be excluded or are insufficient to establish the elements of an AMLA claim. For the reasons discussed below, the court concludes that Ms. Muniz may present Dr. Jensen's testimony but that Dr. Harvey's testimony only as to causation is due to be excluded. Nevertheless, the court finds that the United States' motion for summary judgment is due to be denied because Dr. Jensen's testimony sufficiently creates a genuine dispute of material fact as to all three elements of Ms. Muniz's AMLA claim. The court will first address the Government's arguments against Dr. Jensen, then its arguments against Dr. Harvey.

**The United States' arguments against Dr. Jensen**

The United States asserts that Ms. Muniz cannot establish the standard of care element under the AMLA because Dr. Jensen, Ms. Muniz's only expert who offered testimony as to the appropriate standard of care, should be excluded because she violated Rule 26(a)(2)(B) by failing to adequately disclose the reasons or basis of the opinions in her expert report. The United States also argues that, even if Dr. Jensen is not excluded, her expert report fails to adequately identify the applicable standard of care.

As to the United States' motion to exclude Dr. Jensen's testimony under Rule 26, the

6

court held a hearing on the matter on July 7, 2015, and determined that Dr. Jensen's report satisfied the requirements of Rule 26(a)(2)(B). Thus, for the reasons stated on the record, the court will deny the United States' motion to strike Dr. Jensen's testimony on that basis.

The United States next alleges that Dr. Jensen "never defines the standard of care *or* the basis for her contention that she knew what the standard of care was in 2009." (Doc. 26, at 19) (emphasis added). This court disagrees.

As to whether Dr. Jensen defined the standard of care, the court finds that Dr. Jensen's expert report adequately identifies the applicable standard of care. Under Alabama law, an expert witness' testimony is sufficient to establish the applicable standard of care so long as it would allow a reasonable person to infer what a reasonable physician should have done in a similar situation. *See Rudolph v. Lindsay*, 626 So. 2d 1278, 1281 (Ala. 1993). Dr. Jensen's Rule 26 expert report satisfies that standard.

In her report, Dr. Jensen states that a national standard of care exists for "an Interventional Radiologist performing cerebral angiography faced with the same or similar circumstances as Dr. Ahmed M. Kamel Aal faced in and about his care and treatment of Jessica Muniz." (Doc. 27–5, at 29). Dr. Jensen then identifies numerous steps that Dr. Kamel should have taken during the procedure:

> Dr. Kamel should have known about the plaintiff's previous history of cerebral angiography, including any previous reports and/or films pertaining to the status of the plaintiff's lower extremity vasculature;
>
> As part of that responsibility, Dr. Kamel should have obtained a history from the patient regarding previous angiograpy, and evaluated the plaintiff's pulses in both extremities, including the femoral, dorsalis pedis and posterior tibialis pulses;
>
> As part of that responsibility, Dr. Kamel should have known that the written order

7

for the angiogram noted that the puncture site was to be in the left leg;

That based upon the above knowledge, Dr. Kamel should have recognized that the plaintiff had compromised blood supply to the right lower extremity as documented on an angiogram by Van Wadlington, MD, as indicated on the written request, and by the patient's own report, and should have accessed the normal left femoral artery;

Dr. Kamel's performance of a cerebral angiogram using a right femoral artery approach was below the standard of care by using the compromised right femoral artery instead of the normal left femoral artery.

(Doc. 27-9, at 59–60).

Dr. Jensen's testimony leaves no doubt as to what she believes a reasonable physician should have done in a similar circumstance.  As such, her testimony is adequate under Alabama law.  *See Rudolph*, 626 So. 2d at 1281.

As to whether Dr. Jensen identified the basis for her opinion about the standard of care, Dr. Jensen cited her education, training, and more than twenty-five years of practice as a diagnostic and interventional radiologist as the basis of her opinion.  (*See* doc. 27-9, at 59).  Dr. Jensen's qualifications are an adequate basis for her opinion.  *See Rudolph*, 626 So. 2d at 1282 (holding that "[physician's] recitation of qualifications supports an inference that he is familiar with the appropriate standard"); *Tuck v. Health Care Auth. of City of Huntsville*, 851 So. 2d 498, 502 (Ala. 2002); *Rodgers v. Adams*, 657 So. 2d 838, 842–43 (Ala. 1995).

In sum, Dr. Jensen's expert report adequately identifies the applicable standard of care and the basis for her opinion.  Additionally, Dr. Jensen's report identifies how Dr. Kamel breached that standard of care.  As such, her testimony should not be excluded and creates a genuine dispute of material fact as to the first two elements of Ms. Muniz's AMLA claim—the applicable standard of care and whether Dr. Kamel breached that standard.  Accordingly, the

8

United States is not entitled to summary judgment on this basis.

**The United States' arguments against Dr. Harvey**

The United States next contends that it is entitled to summary judgment because Dr. Harvey, Ms. Muniz's only expert who testified that Dr. Kamel's procedure caused Ms. Muniz's amputation, is due to be excluded. Within its motion for summary judgment, the United States makes two arguments against Dr. Harvey's testimony. First, the United States contends that Dr. Harvey's testimony that Dr. Kamel's procedure caused Ms. Muniz's amputation is due to be excluded because it is impermissibly unreliable under *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. Second, the United States contends that Dr. Harvey's testimony on causation is also due to be excluded because it does not satisfy the AMLA's requirements that he be a "similarly situated health-care provider" to testify as to causation. Although the United States asserts two arguments against Dr. Harvey's testimony, the court will only address the first argument because Dr. Harvey's testimony does not satisfy *Daubert*.

As an initial matter, although Dr. Harvey treated Ms. Muniz on numerous occasions and eventually performed the amputation of Ms. Muniz's leg, his status as Ms. Muniz's treating physician does not, in itself, immunize his testimony from *Daubert*. A treating physicians may testify as a lay witness about his first-hand observations and the decision he made during the course of treatment without being subject to *Daubert* analysis. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005). However, "[o]nce the treating physician expresses an *opinion* unrelated to treatment which is 'based on scientific, technical, or other specialized knowledge,' that witness is offering expert testimony for which the court must perform its

9

essential gatekeeping function as required by *Daubert*." *Wilson v. Taser Intern., Inc.*, 303 F.

App'x 708, 712 (11th Cir. 2008) (emphasis in original) (citing *U.S. v. Henderson*, 409 F.3d 1293,

1300 (11th Cir. 2005).

In the present case, Dr. Harvey's opinion that Dr. Kamel's procedure caused Ms. Muniz's

amputation was not needed to explain his decision making process, nor did it pertain to Ms.

Muniz's treatment.  As such, his opinion is subject to *Daubert* analysis.  *See Henderson*, 409

F.3d at 1300; *Wilson*, 303 F. App'x at 712–13 (holding that testimony regarding a treating

physician's diagnosis of an injury would be permissible as lay testimony, but testimony about the

cause of an injury was expert testimony subject to *Daubert*).  Indeed, Ms. Muniz concedes in her

response to the United States' motion that Dr. Harvey's causation testimony is expert testimony

subject to *Daubert*.  However, she contends that Dr. Harvey's testimony is reliable under

*Daubert*.  This court disagrees.

The basis and methodology for Dr. Harvey's opinion regarding the cause of Ms. Muniz's

amputation is inherently unreliable.  Dr. Harvey provided the following testimony regarding

causation:

> Q:   And would the fact that she only began to become symptomatic after the
> 2009 procedure indicate to you, at least, that damage was done during that
> procedure which ultimately led to the amputation?
>
> A.   (After objection by the Government's attorney).  The answer to that would
> be, yes, I do think that there was some more injury to the artery in 2009.
> *And I base that on the fact that she had no symptoms prior to that, but she
> did develop symptoms after that arteriogram.*

(Doc. 27-31, p. 10) (emphasis added).

Thus, Dr. Harvey's method for determining causation relies upon the temporal proximity

10

between Dr. Kamel's July 20, 2009 procedure and Ms. Muniz becoming symptomatic.  This manner of reasoning is known as the *post hoc ergo propter hoc* fallacy, which means "after this, because of this."  BLACK'S LAW DICTIONARY (10th ed. 2014).  "It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship."  *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005).

The Eleventh Circuit has recognized that an expert may not testify as to the cause of an injury if his methodology is based on temporal proximity.  *See Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1197 (11th Cir. 2010) ("Thus, a mere temporal relationship between an event and a patient's disease or symptoms does not allow an expert to place that even on a list of possible causes of the disease or symptoms."); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1343 (11th Cir. 2010) ("[The plaintiff] cannot overcome the fact that [the physician's] specific causation testimony is rooted in a temporal relationship."); *Cooper v. Marten Transport, Ltd.*, 539 F. App'x 963, 967 (11th Cir. 2013) ("The methodology employed by [the treating physicians] was unreliable, as it amounted to simple reliance on a temporal relationship."). Therefore, because Dr. Harvey's methodology is based on a temporal relationship, his testimony that *Dr. Kamel's procedure* caused Ms. Muniz's subsequent amputation is due to be excluded. Dr. Harvey may, however, testify that *the multiple dissections in Ms. Muniz's femoral artery* caused her amputation because that opinion is based on his treatment of Ms. Muniz rather than a temporal relationship.

**Dr. Jensen provides sufficient testimony as to causation**

Having determined that Dr. Harvey's testimony regarding the cause of Ms. Muniz's amputation is due to be excluded, the question becomes whether Ms. Muniz can establish

11

causation through another source.  Under Alabama law, a plaintiff in a medical-malpractice case is generally required to present expert testimony to establish causation unless "the issue of proximate cause is not . . . beyond the ken of the average layman." *Golden v. Stein*, 670 So. 2d 904, 908 (Ala. 1995) (internal citation omitted); *see Sorrell v. King*, 946 So. 2d 854, 862–63 (Ala. 2006).  In other words, "[u]nless the cause and effect relationship between the breach of the standard of care and the subsequent complication or injury is so readily understood that a layperson can reliably determine the issue of causation, causation in a medical-malpractice case must be established through expert testimony."  *DCH Healthcare Auth.*, 883 So. 2d 1214, 1217–18 (Ala. 2003) (internal citation omitted).

In the present case, the cause of Ms. Muniz's subsequent amputation cannot be "readily understood" by a lay person.  Ms. Muniz's claims are based on a complicated procedure on a leg that had already undergone numerous procedures.  Whether Dr. Kamel's procedure caused a dissection in Ms. Muniz's leg that eventually caused Ms. Muniz's amputation is a complex medical question beyond the knowledge and experience of the lay juror.  As such, Ms. Muniz may only establish the causation element through expert testimony that Dr. Kamel's procedure injured Ms. Muniz.

Dr. Jensen, Ms. Muniz's only other expert witness, did *not* testify that Dr. Kamel's procedure caused Ms. Muniz's subsequent amputation.  However, Dr. Jensen *did* testify that Ms. Muniz suffered an injury as a result of Dr. Kamel's procedure—a dissected femoral artery.   In her deposition, Dr. Jensen offered the following testimony regarding the harm caused by Dr. Kamel's procedure:

> Q.     And, Doctor Jensen, your opinion based on your education, training and

12

> clinical experience, did Doctor Kamel in and about his care of Jessica Muniz
> in 2009 meet the standard of care that would be applicable to a radiologist in
> the national medical community?

A.     No, he did not meet the standard of care.

Q.     *And, in your opinion, as a result of his failure to meet that standard of care,
       did she, indeed, suffer an additional dissection and harm to that vessel as you
       have described?*

A.     *Yes.*

(Doc. 27-3, at 67) (emphasis added).  This testimony, although insufficient to establish that Dr.

Kamel's procedure caused Ms. Muniz's *amputation*, creates a genuine dispute of material fact as

to whether Dr. Kamel's procedure injured Ms. Muniz *by causing a dissection of her femoral

artery*.  As such, Dr. Jensen's testimony creates a genuine dispute of material fact as to the

causation element under the AMLA.

The United States, however, contends that Dr. Jensen's causation testimony is due to be

excluded under Rule 37(c)(1) because she did not indicate in her expert report that she intended

to offer testimony as to causation as required by Rule 26(a)(2)(B).  This court disagrees.

In her expert report, Dr. Jensen stated,

> Dr. Kamel's performance of a cerebral angiogram using a right femoral artery
> approach was below the standard of care by using the compromised right femoral
> artery instead of the normal left femoral artery.  *Further injury occurred to the right
> femoral artery in the form of dissection and she suffered further harm to the vessel.*

 (Doc. 27-9, at 60) (emphasis added).  Although Dr. Jensen could have been more clear, she

indicated in her expert report that she believed that Dr. Kamel's procedure caused the dissection

of Ms. Muniz's right femoral artery—the same opinion Dr. Jensen explained in her deposition.

Thus, the United States had sufficient notice of Dr. Jensen's testimony based upon the contents

of the report.  As such, Dr. Jensen's testimony that Dr. Kamel's procedure harmed Ms. Muniz is *not* beyond the scope of Dr. Jensen's Rule 26 expert report.

Further, even if Dr. Jensen's testimony as to causation violated Rule 26(a)(2)(B), the court is convinced that the violation would be harmless.  *See Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1268 (M.D. Fla. 2006) (recognizing that courts have broad discretion under Rule 37(c)(1) to determine whether a violation of Rule 26(a)(2)(B) is harmless); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (same); *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (same).  Any possible surprise to United States from Dr. Jensen's testimony as to causation would have been minimal as Dr. Jensen indicated in her expert report that she believed Dr. Kamel's procedure harmed Ms. Muniz.  Further, Ms. Muniz's own counsel extensively questioned Dr. Jensen during the deposition as to her opinion that Dr. Kamel's procedure caused a dissection in Ms. Muniz's leg, and the United States had the opportunity to alleviate any possible surprise by asking Dr. Jensen additional questions on reexamination.  Thus, Dr. Jensen's testimony as to causation is not due to be excluded.

In conclusion, Dr. Jensen's testimony that Dr. Kamel's procedure caused harm to Ms. Muniz is *not* due to be excluded and creates a genuine issue of material fact as to whether a proximate causal connection exists between Dr. Kamel's alleged breach of the standard of care in the July 20, 2009 procedure and the injury suffered by Ms. Muniz—a dissected artery.  As such, the court concludes that Dr. Jensen's testimony creates a genuine dispute of material fact as to each of the three elements of Ms. Muniz's AMLA claim.

Accordingly, the United States' motion for summary judgment is due to be denied.

14

### III. Conclusion

In conclusion, the United States' motion to exclude Dr. Harvey's testimony that Dr. Kamel's July 20, 2009 procedure caused Ms. Muniz's subsequent amputation is due to be **GRANTED** because Dr. Harvey's methodology is inherently unreliable under *Daubert*.  (Doc. 25).  However, the United States' motion for summary judgment is due to be **DENIED** because Ms. Muniz can establish the causation element of her AMLA claim through Dr. Jensen's testimony.  (Doc. 25).  The court will enter an accompanying order to that effect.

   **DONE** and **ORDERED** this 3rd day of August, 2015.


_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE